**In re DOUBLE B DISTRIBUTORS, INC. d/b/a 484 Truck Stop, Debtor.**

**Bankruptcy No. 92–6056–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 28, 1994.

Richard R. Thames, Jacksonville, FL, for trustee.

Jonathan H. Alden, Tallahassee, FL, for movant State of Fla.

Alexander G. Smith, Trustee, Jacksonville, FL.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon Motion for Administrative Expense filed by the Florida Department of Environmental Protection ("State"). The Court held hearings on August 17, and August 22, 1994. Upon the evidence presented, the Court enters these findings of fact and conclusions of law:

### Findings of Fact

Debtor owned property which contained a waste water treatment plant. Debtor leased the property to a single tenant who ran the fuel business and operated a large commercial truck stop on the premises. The tenant subleased some of the leased property to a restaurant and other small businesses. The treatment facility was used by the tenant and subtenants at the truck stop.

Debtor's president held a permit issued by the State to operate the facility which consists of a chlorine contact chamber and a series of percolation ponds into which treated water is discharged. Two agencies, the Marion County Public Health Unit ("County") and the State, are primarily responsible for monitoring performance of the treatment facility.

The County inspected the facility on January 7, 1992, found "major violations" and "requested enforcement." Six problem areas were noted: the plant was not fenced or locked to prohibit unauthorized entry; the color and odor of the ponds indicated poor treatment and insufficient chlorination; the "splitter box" had holes in it so that spillage of raw sewage was possible; the clock for regulating flow was improperly set; there was no vacuum breaker to protect the potable water supply; and there was lateral seepage from one of the ponds. The inspector recommended a noncompliance letter be sent to debtor and a follow-up inspection be done.

The State sent a letter dated February 5, 1992, to debtor's principal informing him that the plant was not in compliance and giving ten days to respond with a plan to rectify the situation. The letter states that in addition to the violations noted in the report that there is accumulated sludge in the percolation ponds and excessive vegetation around the ponds.

The State reinspected the plant on February 26, 1992. This report reflects some change in the condition of the facility. The report notes that the splitter is partially repaired, the effluent standard has improved and is now marginal, but that sampling is now unsatisfactory. The report indicates that the facility is in compliance with its permit.

The State next informed debtor that additional action was needed to bring the facility into compliance and gave it twenty days to respond. The letter states that the overall rating of the facility is unsatisfactory and warns failure to correct the violations could lead to additional enforcement action.

On October 13, 1992, the State conducted another inspection and classified the facility site review, the flow measurement, operation and maintenance and the disposal method as unsatisfactory, the effluent standard as marginal and the permit, records and reports and sampling as satisfactory. The report finds that the plant is in compliance with required permit conditions.

Debtor filed its chapter 7 petition on October 27, 1992, and Alexander G. Smith was designated chapter 7 trustee.

On January 15, 1993, the County conducted an inspection and found minor violations and correction of some previous violations. The report states that the facility is now posted for "no trespassing" and that it "appears well operated," however, the potable water supply is still unprotected and there is excessive vegetation around the ponds.

In a writing of April 1, 1993, the State informed the trustee's sales broker that the change in the operator of the treatment facility required a transfer of the operating permit and that no transfer form had been received. In addition, the letter states that the concerns outlined in previous non-compliance letters had not been adequately ad-

dressed and that further enforcement action might be necessary.

On May 3, 1993, the trustee caused eviction of the pre-petition tenant. The trustee then negotiated a short term lease dated May 20, 1993, with SunMart Petroleum Corporation ("SunMart"). The trustee testified that he entered into the lease in an attempt to prevent vandalism. The lease did not require SunMart to pay fixed rent, but it agreed to make a minimum of $3,000.00 in monthly repairs.

The County inspected the site again on May 21, 1993. This inspection states that there is no fence, but no trespassing signs are posted, that the color of the pond is bad, that the skimmer is broken, that there is no protection for the potable water supply, and that vegetation around the ponds needs to be cleared.

On August 6, 1993, the trustee and Sun-Mart entered into a purchase and sale agreement for the property. The sale to SunMart was scheduled to close in October or November, 1993. The sale has not yet closed and is pending.

In a letter dated September 7, 1993, the State informed the trustee of the noncompliance and that the violations found on January 7, 1992, February 26, 1992, October 13, 1992, and May 21, 1993, had not been corrected. The letter gave the trustee fifteen days to respond in writing to this demand for compliance. The trustee responded by letter dated October 4, 1993. The trustee states that a new operator has been hired for the facility and that the operator was working to bring the plant into compliance.

The new operator began operations on October 4, 1993, and upon inspecting the facility found a leak in one corner of the chlorine contact chamber. Repairs were immediately commenced and the State was notified of the leak. On October 21, 1993, the operator notified the State that solids had been released into the pond and that the operator was working to correct this problem.

The repairs made to the chlorine contact chamber in October failed, and on December 22, 1993, the chlorine chamber ruptured. The chamber could not be repaired. The operator had to replace it and requested authority to send waste to another facility. While the chamber was being replaced, a representative of the State authorized disposal at another facility, without requiring an additional permit.

On December 28, 1993, the State informed the trustee that sending waste to another facility was a violation of debtor's permit, and the discharge caused by the leaking chlorine chamber constitutes an additional permit violation. In addition to these two new violations, the letter states that previous violations continue unabated and have "not been adequately addressed" by the trustee.

On May 24, 1994, a lateral discharge from one of the percolation ponds occurred. As is required by state law, the operator informed the State of the leak. The trustee authorized the operator to drain the pond and repair the leak.

The State assessed: (1) punitive fines of $599.00 for failure to provide accurate and timely reports, records and results caused by failure of flow calibration equipment; (2) $599.00 for failure to discourage unauthorized entry because of lack of fence at the site; (3) $7,999.00 for failure to meet effluent limitations based on samples taken in February, 1992; (4) $10,000.00 for improper release or disposal of wastewater or residuals caused by failure of the digester, pumping and hauling of wastewater on January 6, 1993, solids discharged and a failed chlorine contact chamber in October and December, 1993; and (5) $750.00 in costs and expenses. The State argues that these fines and costs are administrative expenses of the estate and filed a claim for administrative expense in the amount of $19,947.00 on May 31, 1994.

*Conclusions of Law*

This case is controlled by *In re N.P. Mining Co., Inc.*, 963 F.2d 1449 (11th Cir.1992). In *N.P.*, the Eleventh Circuit relied upon the policy contained in 28 U.S.C. § 959(b) which requires a trustee operating an estate to comply with state law and held that purely punitive penalties for post-petition violations of state strip mining laws are expenses "ordinarily incident to operating a business" and

are entitled to administrative priority under 11 U.S.C. § 503(b)(1)(A).[1]

After holding that § 929 contained a policy of sufficient importance to support an administrative expense claim, the Eleventh Circuit distinguished between violations which occurred post-petition and those which began pre-petition and continue unabated post-petition. The Court held that violations which occurred pre-petition but were not considered important enough by the state to use its power to force closure of the business were likewise not important enough to threaten the debtor's fresh start and are not administrative expenses of the estate. Thus in *N.P.* those violations which occurred pre-petition but continued unabated post-petition were not administrative expenses of the estate.

In addressing post-petition violations, the Eleventh Circuit held that the trustee must be operating the business for fines incurred to be administrative expenses. The Court said that merely preserving an asset for later distribution or maintaining the status quo did not constitute operation of a business, but that something more is required. In *N.P.* the trustee continued to broker coal, maintaining a contract entered during the chapter 11 phase of the case, and had an employee abate some easily remedied violations. On those facts the court found that the trustee was merely maintaining the status quo and was not operating the business.

This Court dealt with the *N.P.* guidelines in *In re Motel Investments, Inc.,* 172 B.R. 105 (Bankr.M.D.Fla.1994). In that case, this Court held that penalties assessed because of debtor's failure to comply with a pre-petition consent order entered against the debtor, after the state filed suit to force compliance with state wetland protection laws, were administrative expenses of the estate. Unlike the state in *N.P.,* in *Motel Investments* the state acted to force compliance by filing suit

against the debtor and then entering a consent order, thus the Court distinguished *N.P.* from *Motel Investments* and held that the enforcement action taken was sufficient to consider the fines administrative expenses of the estate.

■ Applying these principles, the Court concludes that those violations which occurred pre-petition and continued unabated post-petition are not expenses ordinarily incident to operating the business. Unlike *Motel Investments* where the state filed suit and entered into a consent order, in this case the State did not take any enforcement action save writing threatening letters and filing a motion for administrative expense. The Court holds that non-compliance letters and a motion for administrative expense do not constitute sufficient enforcement activity to distinguish this case from *N.P.* Consequently, those violations which occurred pre-petition and continue post-petition are not of sufficient consequence to be considered administrative expenses, and the fines for failure to provide accurate and timely reports/records/results, for failure to fence the site, and for failure to meet effluent limitations will not receive title 11 administrative expense designation.

■ Turning to the violations which occurred post-petition, the Court must determine whether the trustee is operating the business or is merely maintaining the status quo. After evicting the tenant from the property, the trustee contracted with Sun-Mart to operate the truck stop and to spend a minimum of $3,000.00 a month improving the property rather than posting a guard on the property to protect it from vandalism. Unlike the trustee in *N.P.* who continued to fulfill an existing contract, the trustee in this case entered into a new post-petition contract to continue operation of the truck stop. Subsequent to entering the contract with Sun-

---

1. 28 U.S.C. § 959(b) states in relevant part:
   Except as provided in section 1166 of title 11, a trustee ... in any cause pending in any court of the United states, including a debtor in possession, shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or posses-

   sor thereof would be bound to do if in possession thereof.
   11 U.S.C. § 503(b)(1)(A) states in relevant part: After notice and a hearing, there shall be allowed, administrative expense, ... including— (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after commencement of the case.

Mart, the trustee replaced the operator of the facility. The Court finds that this level of activity is greater than that required to maintain the status quo or to preserve assets of the estate and constitutes operation of the business.

The trustee argues that his actions were reasonable and that his reasonableness in discharging his duties as trustee insulates the estate from considering the fines administrative expenses of the estate. In *N.P.*, the Eleventh Circuit noted that the trustee had an employee abate some violations post-petition but did not consider the trustee's conduct and its reasonableness in reaching its conclusion. Likewise this Court does not find that the reasonableness of the trustee's actions alters the analysis of the penalties and their priority under § 503.

■ Neither party addressed the inclusion of $750.00 in costs and expenses in the State's claim for administrative expenses nor was any evidence presented as to the basis for this portion of the claim. Consequently, the Court finds that this portion of the State's claim is not an administrative expense of the estate.

The Court concludes that the $10,000.00 fine assessed for the two post-petition leaks which occurred on December 22, 1993, and May 27, 1994, and the post-petition failure of the digester is an administrative expense of the estate, but the pre-petition violations which continued unabated do not warrant such a priority. In addition, the Court does not accord the costs and expense portion of the claim administrative expense priority. The Court will enter a separate order consistent with these findings fact and conclusions of law.